No. 06-3092

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

**UNITED STATES OF AMERICA,**
      **Plaintiff-Appellee,**

**v.**

**ANTHONY R. ROMERO,**
      **a/k/a Victor Hugo Gonzales,**
         **Defendant-Appellant.**

On Appeal from the United States District Court
for the District of Kansas
The Honorable Wesley E. Brown, U.S. District Judge
D.C. No. 05-10080-01

## BRIEF OF APPELLEE

**ERIC F. MELGREN**
**United States Attorney**

**Brent I. Anderson**
**Assistant United States Attorney**
**District of Kansas**
**301 N. Main, Suite1200**
**Wichita, Kansas 67202**
**Phone:  (316) 269-6481**
**Kan. Sup. Ct. No. 11611**
**Attorneys for Plaintiff-Appellee**

## ORAL ARGUMENT IS NOT REQUESTED

## THIS BRIEF CONTAINS ATTACHMENTS IN DIGITAL FORM

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

PRIOR OR RELATED APPEALS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF ISSUES PRESENTED FOR REVIEW. . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     I.    THE DISTRICT COURT DID NOT ERR IN DENYING THE
          DEFENDANT'S MOTION TO SUPPRESS.. . . . . . . . . . . . . . . . . 11
          Issue Raised and Ruled On.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          Standard of Review.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          Discussion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

ATTACHMENTS –

     A – Judgment in a Criminal Case
     B – Memorandum and Order Denying Motion to Suppress
     C – Defendant's Motion to Suppress Evidence

# TABLE OF AUTHORITIES

## Cases

*Bumper v. North Carolina*,
    391 U.S. 543, 549 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Florido v. Jimeno*,
    500 U.S. 248, 251 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 23

*Moran v. Burbine*,
    475 U.S. 412, 422-23 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Phillips v. Calhoun*,
    956 F.2d 949, 953-54 (10th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 22

*Schneckloth v. Bustamonte*,
    412 U.S. 218, 219 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

*Scott v. United States*,
    436 U.S. 128, 138 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Angulo-Fernandez*,
    53 F.3d 1177, 1180 (10th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Banks*,
    451 F.3d 721, 728 (10th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 22

*United States v. Doyle*,
    129 F.3d 1372, 1377 (10th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Gay*,
    774 F.2d 368, 376-77 (10th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Mains*,
    33 F.3d 1222, 1227 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Marquez*,
    337 F.3d 1203, 1207 (10th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. McRae*,
    81 F.3d 1528, 1534 (10th Cir. 1996) .. . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Mendenhall*,
    446 U.S. 544, 559 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Orr*,
    864 F.2d 1505, 1508 (10th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . 15, 22

*United States v. Pena*,
    920 F.2d 1509, 1513 (10th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . 14, 20, 21

*United States v. Ramstad*,
    308 F.3d 1139, 1146-47 (10th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Rosborough*,
    366 F.3d 1145, 1148 (10th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Sawyer*,
    441 F.3d 890, 895 (10th Cir. 2006) .. . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*United States v. Shields*,
    573 F.2d 18, 23 (10th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Siwek*,
    453 F.3d 1079, 1084 (8th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. West*,
    219 F.3d 1171, 1177 (10th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*United States v. White*,
    706 F.2d 806, 807-08 (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## **PRIOR OR RELATED APPEALS**

There are no prior or related appeals.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

**I.    WHETHER THE DISTRICT COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO SUPPRESS**

## STATEMENT OF FACTS

In the early morning hours of April 10, 2005, Wichita Police officers responded to a domestic disturbance call in the 1800 block of South Madison, Wichita, Kansas. (Vol. II, at 34, 46.)   After speaking with a neighbor, who had telephoned the police, Officer Izzard and several other officers knocked on the door and windows of the residence.  (*Id*. at 34.)  Sgt. Espinoza called for a Spanish speaking officer to come to the residence because of concerns that the residents did not speak English.  (*Id*. at 72.)  Sgt. Espinoza had an English speaking officer announce, "Wichita Police, please come to the door," and had a Spanish speaking officer make the same announcement in Spanish.  (*Id*. at 70.)  Eventually, Ms. Michelle Montoya answered the door and let the officers into the residence.  (*Id*. at 34.)   The officers checked the residence to make sure that no one was hiding in the bedrooms or closets.  (*Id*. at 41.)  The officers determined that Ms. Montoya and three young children were present in the residence. (*Id*.)

Sgt. Espinoza was standing outside the residence after it had been cleared when he saw an Hispanic male running southbound on Ash Street.  (*Id*. at 46.)  Sgt. Espinoza followed the individual and found him hiding in some bushes.  (*Id*. at 47.)

1

Sgt. Espinoza drew his gun and ordered him out of the bushes. (*Id*. at 57.) Sgt. Espinoza patted the man down and told him to sit on the curb. (*Id*. at 58.) Sgt. Espinoza spoke with him in English for five to ten minutes. (*Id*. at 48.) Sgt. Espinoza testified that the person's English was not very good and he had difficulty communicating with him. (*Id*. at 72-73.) He did not smell of alcohol and his demeanor and actions did not indicate that he had been drinking. (*Id*.) The man told Sgt. Espinoza that he and his brother had been at a bar, had gotten into a disturbance, and he was running from people who were chasing him. (*Id*.) Sgt. Espinoza called dispatch to check if there had been a disturbance reported from a bar in the area and none had been reported. (*Id*. at 49.) The man identified himself to Sgt. Espinoza as Jose Gonzales. (*Id*.)

At this time, Officer Boone and Officer Shelton arrived on the scene. (*Id*. at 50.) Officer Boone and Officer Shelton stayed with the man while Sgt. Espinoza returned to the domestic disturbance call two blocks away. (*Id*.) Officer Boone spoke with him and asked for his name and date of birth. (*Id*. at 9.) The man again identified himself as Jose Gonzales, with a date of birth of April 27, 1978. (*Id*. at 9-10.) Officer Boone ran the man's name through SPIDER to check for warrants. (*Id*. at 10.) Officer Boone asked if the man had previously been in jail and the man stated he had. (*Id*.) Officer Boone and the man were able to converse without a problem.

(*Id.* at 9.)   The man told Officer Boone at least three times, while at the Ash Street

location, that his name was Jose Gonzales.  (*Id*. at 10-11.)

He told Officer Boone that he and his brother had gotten into an altercation at

a bar in the area of Harry and Palisade and his brother had been struck over the head

with a gun and was injured.  (*Id*. at 11.)   According to the man, his brother had been

taken to a nearby residence and was fine.  (*Id*. at 12.)  The man could not remember

the number of the residence but described the residence and where it was located.

(*Id*.)  Officer Boone dispatched officers to the location in an attempt to see if the

man's brother needed any medical attention. (*Id*.)   The officers were unable to locate

his brother or a residence in the area that matched the description the man had

provided. (*Id*. at 12.)

Officer Boone was contacted by Sgt. Espinoza who asked if the man was

willing to go to the scene of the domestic violence call to determine whether he was

involved.  (*Id*. at 11.)   The man was driven to the 1800 block of Madison by Officer

Boone.  (*Id*. at 12.)

After arriving at the 1800 block of Madison, Officer Boone again spoke with

the man and told him that he faced possible charges if he did not identify himself.

(*Id*. at 14.)   The man then gave the name of Victor Gonzales with a  date of birth of

July 7, 1978.  (*Id*.)  Officer Boone ran this information through SPIDER to check for

warrants and again did not locate an individual with that name and date of birth.  (*Id.*)

3

Officer Boone told the man that if he had been in jail, the Wichita Police Department would find out who he was. (*Id*. at 15.)

The officers continued to have difficulty determining the man's true identify. Officers escorted Ms. Montoya to the car to determine if the man was involved in the domestic disturbance. (*Id*.) Ms. Montoya identified the man as her boyfriend, Anthony Romero. (*Id*.) According to Ms. Montoya, her boyfriend used the names Anthony Romero and Victor Hugo Gonzales. (*Id*. at 83.) The man told Officer Boone that his name was not Anthony Romero but Victor Gonzales. (*Id*. at 16.) Officer Boone ran the name Anthony Romero through SPIDER and the records came back that the defendant had two felony warrants in Sedgwick County, Kansas. (*Id*.) Officer Boone told the man that the name Anthony Romero came back with two felony warrants. (*Id*.) Once Officer Boone learned that Mr. Romero had two felony warrants, the man was asked to step out of the patrol car, he was handcuffed, taken into custody, and placed back in the vehicle. (*Id*. at 29.) The man again told Officer Boone that his name was Victor not Anthony Romero. (*Id*.) Officer Boone asked him if he had any identification inside the residence. (*Id*.) The man stated that he believed he did. (*Id*.)

Sgt. Espinoza had previously worked in the Wichita Police Department Narcotics Division and recognized the name Anthony Romero as someone who was involved with dealing drugs. (*Id*. at 51.) Sgt. Espinoza asked Ms. Montoya for

permission to search the residence for drugs.  (*Id*.)  Ms. Montoya gave the officers

permission to search the residence except for her boyfriend's closet.  (*Id*. at 84.)  Ms.

Montoya told the officers that they would need his consent to search there.  (*Id.*)

According to Ms. Montoya, if he consented to the search of the closet then the search

was fine with her.  (*Id*.)

Sgt. Espinoza went out to the police car and Officer Boone told him that the

boyfriend continued to say his name was Jose or Victor.  (*Id*. at 52.)  The man told

Sgt. Espinoza that his identification was inside the door of the residence. (*Id*. at 62.)

Sgt. Espinoza asked if he could search the man's closet for identification.  (*Id.*)  Sgt.

Espinoza did not tell him that he wanted to look for drugs.  (*Id*.at 62.)  The man

consented to the search of the closet.  (*Id*.)  Sgt. Espinoza went back into the

residence and searched the closet.  (*Id*. at 64.)

Sgt. Espinoza started his search on the top shelf of the closet where there were

clothes neatly stacked and folded.  (*Id.*)  Sgt. Espinoza went through each set of

clothes feeling for an I.D. and also looking for drugs.  (*Id*. at 65.)   Between the

clothes, Sgt. Espinoza found a white plastic bag, approximately 12 inches by 12

inches, similar to a Walmart bag.[1]  (*Id*. at 67.)  Inside the white plastic bag was a clear

---

[1]Sgt. Espinoza originally testified that he found a clear baggie containing an off-white substance that he identified as cocaine.  (Vol. II, at 53.)  On cross-examination, Sgt. Espinoza corrected himself and explained that the clear baggie containing the cocaine was inside a white plastic bag.  (*Id*. at 68.)

plastic bag containing a substance Sgt. Espinoza believed to be cocaine. (*Id*. at 68.) Inside the closet, Sgt. Espinoza also found a citation issued by a Wichita police officer to an Anthony Romero and pay stubs in the name of Anthony Romero. (*Id*. at 53-54.)

Officer Boone transported the man to jail, where he compared the defendant's mug shot with the defendant, and identified him as Anthony Romero. (*Id*. at 28.) He subsequently was charged with possession with the intent to distribute fifty grams or more of cocaine base. (Vol. I, Doc. 1.)

The defendant's girlfriend, Michelle Montoya, testified at the suppression hearing. (Vol. II, at 73.)    According to Ms. Montoya, prior to the domestic disturbance, she and Mr. Romero had been at a family gathering at her brother's house. (*Id*. at 74.)  Ms. Montoya testified that the defendant had been drinking heavily. (*Id*. at 75.)  She and Mr. Romero left the party at about 11:00 p.m. and returned home; they got into an argument; Mr. Romero left the house; and the police arrived. (*Id*.)

Ms. Montoya testified that Sgt. Espinoza asked her to identify the defendant and asked for permission to search the residence. (*Id*. at 77-78.)  According to Ms. Montoya, Officer Izzard took her out to the police car and Ms. Montoya identified the man in the car as her boyfriend,  Anthony Romero. (*Id*. at 80.) Ms. Montoya testified

that the Spanish speaking officer did not interpret for Mr. Romero and she never saw the Spanish speaking officer speak with Mr. Romero.  (*Id*.)

Ms. Montoya consented to the search of the residence except for the defendant's property in the closet.  (*Id*. at 84.) Ms. Montoya testified that she told the officers that they would need to get the defendant's consent to search his closet.  (*Id*.) According to Ms. Montoya, if the officers had permission from Mr. Romero to search the closet, it was fine with her.  (*Id*.)

The defendant testified at the suppression hearing, through an interpreter, that he speaks very little English. (Vol. II, at 85.) The defendant testified that "I didn't give them exact permission that they could search the house." (*Id*. at 85.)  The defendant further testified that the officers never asked him for permission to search the closet. (*Id*. at 87.)  Officer Boone testified that he was with the defendant when Sgt. Espinoza asked for and obtained  permission to search the closet for identification. (*Id*. at 17, 52.)

On September 21, 2005, Anthony Romero was charged in a superseding indictment with one count of possession with the intent to distribute approximate 427 grams of marijuana on December 12, 2003; one count of possession with the intent to distribute approximately 5,235 grams of marijuana on June 17, 2004; and one count of possession with the intent to distribute fifty grams or more of cocaine base on April 10, 2005.  (Vol. I, Doc. 16.)

The defendant filed his motion to suppress on September 13, 2005. (Supp. Vol. I, Doc. 7.)  On September 20, 2005, the United States filed a response to the defendant's motion to suppress. (Vol. I, Doc. 12.)  On September 22, 2005, the district court held the suppression hearing. (Vol. II.)

On October 20, 2005, the district court issued a Memorandum and Order denying the defendant's motion to suppress. (Vol. I, Doc. 25; Attach. B.)  The district court found that Sgt. Espinoza asked the defendant for permission to search the closet for identification; that the defendant's consent was voluntary; and that the search was within the scope of the consent granted. (Vol. I, Doc. 25 at 6-10; Attach B.)

Following a four-day jury trial, the defendant was convicted on December 9, 2005, of all counts. (Vol. I, Doc. 39.)

A Presentence Investigation Report was prepared and based on a total offense level of 34 and a criminal history category of II, the advisory Guidelines range was 168 to 210 months. (Vol. VI, ¶ 79.)

On February 27, 2006, the district court held a sentencing hearing. (Vol. IV.)  The district court denied the government's request for an enhancement for obstruction of justice and denied the defendant's request for a reduction for being a minor or minimal participant. (*Id*. at 14, 15.)  The defendant was sentenced to 160 months in prison to be followed by five years of supervised release. (*Id*. at 18.)

On March 8, 2006, the defendant filed a timely notice of appeal. (Vol. I, Doc. 49.)

## SUMMARY OF ARGUMENT

The defendant contends that the district court erred in denying his motion to suppress. Specifically, he argues (1) that he did not give the officers consent to search his closet; (2) that if he did consent, it was not free and voluntary; and (3) that, in any event, Officer Espinoza exceeded the scope of consent given. (Aplt. Br. at 2.) The record, however, does not support these claims.

First, the record shows that the defendant did consent to a search of his closet. The defendant's claim that he did not is rebutted by Officer Espinoza's testimony that he asked the man if he could search his closet for identification and the man consented. (Vol. II, at 62.) Further, Officer Boone testified that he was with the defendant when Sgt. Espinoza asked for and obtained permission to search the closet for identification. (Vol. II, at 17, 52.) In making this finding, the district court properly found Sgt. Espinoza's testimony to be credible. (Vol. I, Doc. 25, at 6; Attach B.)

Second, the district court's determination that the defendant's consent was voluntary was not clearly erroneous. The district court considered the fact that the defendant was in custody at the time of consent but also considered the facts that the officers did not use any overt display of force or coercion to gain consent; that the

9

defendant was on a public street in front of his home at the time of consent; and that the interaction between the officer and the defendant was cordial and courteous. The evidence showed that although the defendant may not be fluent in English, he understood the request to search, was able to communicate his thoughts to the officer, and he made a decision of his own free will to grant permission to search the closet for identification. Further, the district court found that there was no credible evidence that the defendant's ability to understand or to make a voluntary decision was impaired by alcohol. The district court also considered the fact that Sgt. Espinoza told a half-truth when he asked to search for identification but did not tell the defendant he wanted to search for drugs. The district court properly found that this was a free and unconstrained choice made by the defendant and the officer's additional suspicions or intent did not render the defendant's choice involuntary. *Cf. United States v. White*, 706 F.2d 806, 807-08 (7th Cir. 1983) (officer's subjective intent to search for money did not render involuntary a consent to search for drugs).

Finally, the district court did not err as a matter of law in finding that Officer Espinoza did not exceed the permitted scope of the consent. The defendant's voluntary consent to search the closet for identification included consent to search any item in the closet that might reasonably contain identification. *See Florida v. Jimeno*, 500 U.S. 248, 251 (1991). It was, therefore, reasonable for the officer to

search the white plastic bag found among the clothes in the closet for identification.

## ARGUMENT AND AUTHORITIES

I.   THE DISTRICT COURT DID NOT ERR IN DENYING THE DEFENDANT'S MOTION TO SUPPRESS.

### Issue Raised and Ruled On

The defendant filed a motion to suppress on September 13, 2005.  (Supp.Vol. I, Doc. 7; Attach. C.)  On October 19, 2005, the district court denied the defendant's motion to suppress evidence.  (Vol. I, Doc. 25; Attach. B.)

### Standard of Review

When reviewing the denial of a motion to suppress, the Court will view "the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous, and review the ultimate determination of reasonableness under the Fourth Amendment *de novo*."  *United States v. Marquez*, 337 F.3d 1203, 1207 (10th Cir. 2003).  Determining credibility of witnesses and assigning the weight to be given to evidence is the province of the district court, and this Court accepts the district court's factual findings unless they are clearly erroneous.  *United States v. Rosborough*, 366 F.3d 1145, 1148 (10th Cir. 2004).

**Discussion**

The defendant argues he did not give the officers consent to search his closet; that if consent was given, it was not free and voluntary; and if consent was given and was free and voluntary, the search exceeded the scope of the consent given. (Aplt. Br. at 2.)

While a warrantless search may in other circumstances be a violation of the Fourth Amendment, "one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Valid consent is that which is "freely and voluntarily given." *Id*. at 222. Whether a defendant has freely and voluntarily given his consent to a search is a question of fact and is determined from the totality of the circumstances. *United States v. West*, 219 F.3d 1171, 1177 (10th Cir. 2000). A two-part test has been utilized to make this determination: "First, the government must proffer 'clear and positive testimony that consent was unequivocal and specific and freely given.' Furthermore, the government must prove that this consent was given without implied or express duress or coercion." *See United States v. McRae*, 81 F.3d 1528, 1534 (10th Cir. 1996) (quoting *United States v. Angulo-Fernandez*, 53 F.3d 1177, 1180 [10th Cir. 1995]). The government does not discharge its burden "by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 549 (1968).

12

## A.     <u>The Defendant Consented to the Search</u>

The defendant argues that the district court's factual finding that the defendant consented to the search is clearly erroneous because Sgt. Espinoza's credibility was questionable.  (Aplt. Br. at 9.)  According to the defendant, Sgt. Espinoza was untruthful with the district court on two occasions.  (*Id*.)

A review of the record does not establish that Sgt. Espinoza was untruthful. In both instances, any inconsistency in Sgt. Espinoza's testimony was simply an innocent misrecollection.  The district court found Sgt. Espinoza's testimony at the suppression hearing to be credible.  (Vol. I, Doc. 25, at 6; Attach B.)

In the first instance, Sgt. Espinoza testified at the suppression hearing that he found the cocaine in a clear baggie between some clothes in the closet.  (Vol. II, at 53.)  However, on cross-examination, Sgt. Espinoza corrected his testimony explaining that the clear bag of cocaine was inside a white plastic bag in the closet. (*Id*. at 67.)

In the second instance, Sgt. Espinoza testified at the suppression hearing that he had difficulty communicating with the defendant and that either the defendant spoke Spanish or his English was not very good.  (*Id*. at 73.)  At trial, Sgt. Espinoza testified that he did not recall having difficulty talking with the defendant. (Vol. III, at 51.)  However after Sgt. Espinoza refreshed his recollection by reviewing a transcript of his testimony at the suppression hearing, Sgt. Espinoza testified that at

first he did have some difficulty communicating with the defendant. (Vol. III, at 53.)

The defendant asserts that during the suppression hearing, Sgt. Espinoza testified that he called for an interpreter to help communicate with Mr. Romero. (Aplt. Br. at 12.)  However, a review of the record does not support this assertion. Sgt. Espinoza testified at the suppression hearing that he called for an interpreter to come to the residence to make contact with the people inside. (Vol. II, at 70, 72.) Further, Sgt. Espinoza testified at trial that he called for a Spanish interpreter to make entry into the residence, not to interpret for Mr. Romero.  (Vol. III, at 53.)  Ms. Montoya testified at the suppression hearing that the Spanish speaking officer did not interpret for Mr. Romero.  (Vol. II, at 80.)  Thus, there was no inconsistency in Sgt. Espinoza testimony concerning the interpreter.

Sgt. Espinoza did not, as the defendant alleges, tell two very different stories during his testimony.  (Aplt Br. at 12.)  Sgt. Espinoza's testimony simply contained two innocent misrecollections.  Sgt. Espinoza's testimony is credible and the district court did not err in finding his testimony to be so.  "Assessment of the credibility of witnesses is the prerogative of the trial court, not an appellate court, which neither sees nor hears the witnesses."  *United States v. Pena*, 920 F.2d 1509, 1513 (10th Cir. 1990).

The defendant further suggests that Sgt. Espinoza erred in failing to present a consent-to-search form for the defendant to sign, arguing that law enforcement should

be held to a higher burden of verification or documentation when obtaining consent to search a home.  (Aplt. Br. at 15.)  The defendant failed to raise this issue before the district court and offers no legal authority in support of this argument.  (Supp. Vol. I; Attach. C.)  The Court has long declined to rule on issues not raised in the district court when the defendant cannot show an impediment precluded his raising the issue or that the ground not raised constituted plain error resulting in manifest injustice. *See United States v. Orr*, 864 F.2d 1505, 1508 (10th Cir. 1988).  The Court also declines to consider a position unsupported by legal argument or authority. *See United States v. Banks*, 451 F.3d 721, 728 (10th Cir. 2006); *Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir. 1992) (refusing to consider a position unsupported by legal argument or authority).  Further, failure to provide the defendant with a consent-to-search form did not render the defendant's consent involuntary. *See United States v. Siwek*, 453 F.3d 1079, 1084 (8th Cir. 2006).

Whether the consent to search was voluntary is a question of fact determined from the totality of the circumstances.  *United States v. West*, 219 F.3d 1171, 1177 (10th Cir. 2000).  In concluding that the defendant's consent to search was voluntary, the district court found that Sgt. Espinoza asked for consent to search; the officers did not use any overt display of force or coercion to gain consent; the officers were cordial and courteous to the defendant; the defendant is a competent adult who understood the circumstances and nature of the officer's request; the defendant

15

understood the request; and granted permission to search of his own free will. (Vol. I, Doc. 25; Attach. B.) The district court did not err in finding that the defendant voluntarily consented to the search.

## B.    Consent was Voluntary

The defendant argues that he was in custody from the time Sgt. Espinoza drew his gun and directed the defendant to come out of the bushes. Further, the defendant alleges that the context in which the consent occurred was highly suspect; there was a communication barrier; Ms. Montoya stated that the defendant had been drinking heavily; and Sgt. Espinoza tricked the defendant into consenting to the search. According to the defendant, these factors support a conclusion that consent was not voluntary. (Aplt. Br. at 15-17.)

The federal test to determine the validity of a consent to search requires "a factual determination based upon the totality of the circumstances of whether the consent was the product of an 'essentially free and unconstrained choice by [the] maker' or whether it was the product of 'duress or coercion, express or implied.'" *United States v. Sawyer*, 441 F.3d 890, 895 (10th Cir. 2006) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 227 (1973). "Factors to consider within the federal totality of the circumstances test include physical mistreatment, use of violence, threats, promises, inducements, deception, trickery, or an aggressive tone, the

physical and mental condition and capacity of the defendant, the number of officers on the scene, and the display of police weapons." *Sawyer*, 441 F.3d at 895.

The defendant argues that he was in custody from the time Sgt. Espinoza drew his gun and directed the defendant to come out of the bushes. (Aplt. Br. at 15.) The district court found that the defendant was in custody at the time of the consent. (Vol. I, Doc. 25; Attach. B.)  "An alleged voluntary consent to search must be viewed with caution and misgivings if given after arrest." *United States v. Shields*, 573 F.2d 18, 23 (10th Cir. 1978).  However, "[c]onsent to search may be voluntary even though the consenting party is being detained at the time consent is given." *United States v. Doyle*, 129 F.3d 1372, 1377 (10th Cir. 1997).  "The court must look to all the facts and circumstances in determining whether consent to search was freely given by one under arrest." *Shields*, 573 F.2d at 23.  The district court properly found that based upon the totality of the circumstances, the defendant's consent was voluntary. (Vol. I, Doc. 25 at 7; Attach B.)

Although the defendant may not be fluent in English, a review of the evidence shows that the defendant understood the request for consent to search and was able to communicate with the officers. (Vol. II, at 9, 73; Vol. I, Doc. 25; Attach. B.)  The district court properly found that the evidence established that the defendant understood the request to search; he was able  to communicate his thoughts to the officer; and he made a decision of his own free will to grant permission to search the

17

closet for his identification.  (Vol. I, Doc. 25 at 7; Attach. B.)   Further, the district court noted that the evidence indicated that the defendant is the one who suggested to officers that they could find his identification in the house.  (*Id*.)

Ms. Montoya testified during the suppression hearing that the defendant, her boyfriend, had been drinking heavily that day.  (Vol. II, at 75.)  However, neither Sgt. Espinoza nor Officer Boone smelled the odor of an alcoholic beverage on the defendant, and the defendant's actions and demeanor did not indicate that he had been drinking.  (Vol. II, at 13, 73.)   A review of the record shows that there is no credible evidence that  the defendant's ability to understand or to make a voluntary decision was impaired by alcohol.   The defendant's responses to the officers were lucid and coherent.  *See  United States v. Gay*, 774 F.2d 368, 376-77 (10th Cir. 1985) (finding consent was voluntary where defendant was so intoxicated he was staggering and swaying as he walked and slurred his speech but was able to answer officers' questions and produce his driver's license upon request).

Sgt. Espinoza admitted that at the time he asked for consent to search, he wanted to search for drugs as well as the defendant's identification and he said nothing to the defendant about searching for drugs.  (Vol. II, at 62; Vol. I, Doc. 25 at 8; Attach. B.)  The defendant argues that Sgt. Espinoza deceived him by stating that he "only wanted to look for Mr. Romero's identification."  (Aplt. Br. at 17.)

18

The district court found that the officer's request could be characterized as a "half-truth," because his representations were truthful that he wanted to search for identification, but he did not disclose that he also wanted to search for drugs.  (Vol. I, Doc. 25 at 8; Attach. B.)   An officer is not required to disclose all his suspicions and explain all the possible ramifications of allowing a particular search.  *Cf. Moran v. Burbine*, 475 U.S. 412, 422-23 (1986) (in determining whether waiver of Miranda right is voluntary, the state of mind of the police is irrelevant to the question of the intelligence and voluntariness of respondent's election to abandon his rights; we have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights).   As the district court properly held, the question here "is not whether the [defendant] acted in [his] ultimate self-interest, but whether [he] acted voluntarily." *United States v. Mendenhall*, 446 U.S. 544, 559 (1980).

The "subjective intent" standard was rejected in *Scott v. United States*, 436 U.S. 128, 138 (1978), where the Supreme Court established "a standard of objective reasonableness without regard to the underlying intent or the motivation of the officers involved." Thus, Sgt. Espinoza's subjective intent to search for drugs did not render involuntary a consent to search for identification. *Cf. United States v. White*, 706 F.2d 806, 807-08 (7th Cir. 1983) (officer's subjective intent to search for money did not render involuntary a consent to search for drugs).

19

The district court properly found that the defendant's consent was voluntary based on the totality of the circumstances, including the defendant's understanding of the request to search, his understanding of the consequences flowing from his consent, and the absence of any evidence that his consent was a product of improper coercion.

## C.    <u>Scope of Consent</u>

The defendant further argues that his consent to search was limited to looking for his identification and searching the bag found in the closet exceeded the scope of the search.  (Aplt. Br. at 18-19.)

The general standard for measuring the scope of consent is that of "objective reasonableness, asking what the typical reasonable person would have understood to be the scope of his or her consent under the circumstances."  *United States v. Pena*, 143 F.3d 1363, 1367 (10th Cir. 1998).  The object of the search defines the scope of consent.  *Pena*, 143 F.3d at 1368.  In this case, the object of the search was the defendant's identification.  (Vol. I, Doc. 25 at 10; Attach B.)  Because the defendant consented to a search for his identification, he granted permission for the officer to look anywhere in the closet, and within any item in the closet, that might reasonably contain identification.  *See Florido v. Jimeno*, 500 U.S. 248, 251 (1991) (consent to search for specific items includes consent to search those areas or containers that might reasonably contain those items); *cf. United States v. Ramstad*, 308 F.3d 1139,

20

1146-47 (10th Cir. 2002) (consent to search for drugs or contraband, implies officer could look wherever drugs might be hidden); *United States v. Pena*, 143 F.3d 1363, 1368 (10th Cir. 1998) (consent to an officer's request to search for drugs would reasonably include areas in which one would be expected to hide drugs); *United States v. Mains*, 33 F.3d 1222, 1227 (10th Cir. 1994) (holding that because defendant consented to search of apartment for another person, he consented to search of any area large enough to accommodate that individual).

Sgt. Espinoza searched the defendant's closet feeling each piece of clothing to determine if it might contain identification. (Vol. II. at 65.)  Between the clothes, Sgt. Espinoza found a white plastic bag, approximately 12 inches by 12 inches, similar to a Walmart bag.  (*Id*. at 67.)  This white plastic bag could reasonably have contained some form of identification and, therefore, based upon the defendant's voluntary consent for the search of the closet for identification, Sgt. Espinoza was entitled to search the bag.  *Cf. United States v. Pena*, 143 F.3d 1363, 1368 (10th Cir. 1998) (consent to an officer's request to search for drugs would reasonably include areas in which one would be expected to hide drugs).  Sgt. Espinoza looked inside the white plastic bag and found a clear plastic bag containing a substance he believed to be cocaine.  (*Id*. at 68.)  Inside the closet, Sgt. Espinoza also found a citation issued by a Wichita police officer to "Anthony Romero" and pay stubs in the name of Anthony Romero.  (*Id*. at 53-54.)

21

The defendant opines that Officer Espinoza knew the defendant's identity before he searched the closet and, therefore, consent was no longer valid; that it was unreasonable to expect to find identification among clothing that had been washed, folded, and neatly stacked on a shelf; that it was unreasonable to expect to find identification in a folded white plastic bag; and that Sgt. Espinoza should have obtained separate consent from the defendant before searching the bag. (Aplt. Br. at 18-19.) The defendant failed to raise these issues before the district court. (Supp. Vol. I, Doc. 7; Defendant's Motion to Suppress; Attach. C.) This Court has long declined to rule on issues not raised in the district court when the defendant cannot show an impediment precluded his raising the issue or that the ground not raised constituted plain error resulting in manifest injustice. *Orr*, 864 F.2d at 1508. Further, the defendant offers no legal authority in support of these arguments. (Aplt. Br. at 18-19.) The Court also declines to consider a position unsupported by legal argument or authority. *Banks*, 451 F.3d at 728; *Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir. 1992) (refusing to consider a position unsupported by legal argument or authority).

The defendant's argument before the district court was that the officers exceeded the scope of consent when they seized and opened the wrapped package found in the closet. (Supp. Vol. I, Doc. 7; Attach. C.) The district court considered this issue and properly found that the consent to search included permission to search

any item in the closet that might reasonably contain identification including the white

plastic bag. *See Florido v. Jimeno*, 500 U.S. 248, 251 (1991) (consent to search for

specific items includes consent to search those areas or containers that might

reasonably contain those items).

## <u>CONCLUSION</u>

The district court did not err in denying the defendant's motion to suppress

finding that, given the totality of the circumstances, the defendant's consent was

voluntary and the search was within the scope of the consent granted.


Respectfully submitted,

ERIC F. MELGREN
United States Attorney


_____

<u>s/ Brent I. Anderson</u>
Brent I. Anderson
Kan. Sup. Ct. No. 11611
Assistant United States Attorney
District of Kansas
301 N. Main, Suite 1200
Wichita, Kansas 67202
Tel.:  (316) 269-6481
FAX: (316) 269-6484
Brent.Anderson@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that two copies of the above and foregoing <u>Brief of Appellee</u>

were mailed, postage prepaid, the 22nd day of September, 2006, to:

John K. Henderson, Jr.
Assistant Federal Public Defender
301 N. Main, Suite 850
Wichita, Kansas 67202
<u>John_Henderson@fd.org</u>

and the foregoing with attachments was also provided in digital format on a compact

disc (or by e-mail).

Further, all required privacy redactions have been made and, with the exception

of the redactions, every document submitted in digital form is an exact copy of the

written document filed with the Clerk. The digital submissions have been scanned

for viruses with Trend Micro Office Scan, Version 6.5, updated continuously and,

according to the program, are free of viruses.

_____

_____     s/ Brent I. Anderson_____
Brent I. Anderson, Kan. Bar No. 11611
Assistant United States Attorney
District of Kansas
301 N. Main, Suite 1200
Wichita, Kansas 67202
(316) 269-6481
(316) 269-6484 (FAX)
<u>Brent.Anderson@usdoj.gov</u>

ATTACHMENT A

AO 245B (Rev. 06/05) - Judgment in a Criminal Case

# United States District Court

## District of Kansas

UNITED STATES OF AMERICA

v.

ANTHONY R. ROMERO
AKA VICTOR HUGO GONZALES

### JUDGMENT IN A CRIMINAL CASE

Case Number:    **6:05CR10080-001**

USM Number:    **19267-031**

Defendant's Attorney    John K. Henderson

## THE DEFENDANT:

[ ]    pleaded guilty to count(s): __.

[ ]    pleaded nolo contendere to count(s) ___ which was accepted by the court.

[x]    was found guilty on count(s) 1, 2 and 3 of the Superseding Indictment  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Marijuana | 12/12/03 | 1 |
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Marijuana | 06/17/04 | 2 |
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Cocaine Base | 04/10/05 | 3 |

The defendant is sentenced as provided in pages 2 through _7_ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[ ]    The defendant has been found not guilty on count(s) ___.

[x]    Count(s) of the Indictment  (is)(are) dismissed on the motion of the United States.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant shall notify the court and United States attorney of material changes in economic circumstances.

02/27/06
_____
Date of Imposition of Judgment


s/Wesley E. Brown
_____
Signature of Judge


Honorable Wesley E. Brown, Senior U. S. District Judge
_____
Name & Title of Judge


March 1, 2006
_____
Date

AO 245B (Rev. 06/05) Judgment in a Criminal Case---Imprisonment

| | |
|---|---|
| DEFENDANT: | ANTHONY R. ROMERO |
| | AKA VICTOR HUGO GONZALES |
| CASE NUMBER: | 6:05CR10080-001 |

Judgment - Page 2  of  7

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 160 months .

Count 1: 60 months.
Count 2: 60 months.
Count 3: 160 months.
Said terms of all counts to run concurrently with each other.

[ ]    The Court makes the following recommendations to the Bureau of Prisons:

[**x**]    The defendant is remanded to the custody of the United States Marshal.

[ ]    The defendant shall surrender to the United States Marshal for this district.

　　　[ ] at ＿＿ on ＿＿.

　　　[ ] as notified by the United States Marshal.

[ ]    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

　　　[ ] before ＿ on ＿＿.

　　　[ ] as notified by the United States Marshal.

　　　[ ] as notified by the Probation or Pretrial Services Officer.

# RETURN

I have executed this judgment as follows:

_____

_____

　　　Defendant delivered on_____ to _____

at _____ , with a certified copy of this judgment.


_____
UNITED STATES MARSHAL


By _____
Deputy U.S.  Marshal

AO 245B (Rev. 06/05) Judgment in a Criminal Case ---Supervised Release

| | |
|---|---|
| DEFENDANT: | ANTHONY R. ROMERO |
| | AKA VICTOR HUGO GONZALES |
| CASE NUMBER: | 6:05CR10080-001 |

Judgment - Page 3 of 7

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of  5 years .

Count 1: 2 years.
Count 2: 2 years.
Count 3: 5 years.
Said terms of all counts to run concurrently with each other.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance.

The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

[ ]    The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check if applicable)

[x]    The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check if applicable)

[x]    The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check if applicable)

[ ]    The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check if applicable)

[ ]    The defendant shall participate in an approved program for domestic violence. (Check if applicable)

If this judgment imposes a fine or restitution, it is to be a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without permission of the court or probation officer;
2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3)   the defendant shall answer truthfully all inquiries by the probation officer and follow instructions of the probation officer;
4)   the defendant shall support his or her dependants and meet other family responsibilities;
5)   the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substances or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)   the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B (Rev. 06/05) Judgment in a Criminal Case ---Supervised Release

| | |
|---|---|
| DEFENDANT: | ANTHONY R. ROMERO |
| | AKA VICTOR HUGO GONZALES |
| CASE NUMBER: | 6:05CR10080-001 |

Judgment - Page 4 of 7

# SPECIAL CONDITIONS OF SUPERVISION

1.  The defendant is prohibited from possessing or purchasing a firearm, ammunition, destructive device, or other dangerous weapon.

2.  The defendant shall abstain from the use of alcohol during the term of supervision.

3.  Upon completion of the term of imprisonment, the defendant is to be surrendered to a duly authorized immigration official for deportation in accordance with the established procedures provided by the Immigration and Naturalization Act, 8 U.S.C. 1101 - 1524.  If ordered deported, the defendant shall not unlawfully reenter the United States.

4.  The defendant shall participate in an approved program for substance abuse, which may include drug/alcohol testing, counseling and inpatient treatment, and share in the costs, based on the ability to pay.

AO 245B (Rev.06/05) Judgment in a Criminal Case---Criminal Monetary Penalties
_____

| DEFENDANT: | ANTHONY R. ROMERO | |
|---|---|---|
| | AKA VICTOR HUGO GONZALES | Judgment - Page 5 of 7 |
| CASE NUMBER: | 6:05CR10080-001 | |

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the total criminal monetary penalties under the Schedule of Payments set forth in this Judgment.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $ 300 | $ | $ |

[ ]    The determination of restitution is deferred until  _. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

[ ]    The defendant shall make restitution (including community restitution) to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|---|
| Totals: | $ _ | $ _ | | |

[ ]    Restitution amount ordered pursuant to plea agreement $  _

[ ]    The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options set forth in this Judgment may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

[ ]    The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

[ ]    the interest requirement is waived for the    [ ] fine and/or    [ ] restitution.

[ ]    the interest requirement for the     [ ]  fine and/or    [ ] restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev.06/05) Judgment in a Criminal Case---Criminal Monetary Penalties

| | |
|---|---|
| DEFENDANT: | ANTHONY R. ROMERO |
| | AKA VICTOR HUGO GONZALES |
| CASE NUMBER: | 6:05CR10080-001 |

Judgment - Page 6 of 7

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A   [ ]   Lump sum payment of $ due immediately, balance due

    [ ]   not later than _____, or

    [ ]   in accordance with ( ) C, ( ) D, ( ) E, or ( ) F below; or

B   [x]   Payment to begin immediately (may be combined with ( ) C,  ( ) D, or (x) F below); or

C   [ ]   Payment in monthly installments of not less than 5% of the defendant's monthly gross household income over a period of __
    years to commence __ days after the date of this judgment; or

D   [ ]   Payment of not less than 10% of the funds deposited each month into the inmate's trust fund account and monthly installments
    of not less than 5% of the defendant's monthly gross household income over a period of __ years, to commence __ days after
    release from imprisonment to a term of supervision;  or

E   [ ]   Payment during the term of supervised release will commence within _ (e.g., 30 or 60 days) after release from imprisonment.
    The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   [x]   Special instructions regarding the payment of criminal monetary penalties:


If restitution is ordered, the Clerk, U.S. District Court, may hold and accumulate restitution payments, without distribution, until the amount accumulated is such that the minimum distribution to any restitution victim will not be less than $25.

Payments should be made to Clerk, U.S. District Court, U.S. Courthouse - Room 259, 500 State Avenue, Kansas City, Kansas 66101.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

    [ ]   Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount Joint and Several Amount and corresponding payee, if appropriate.

| Case Number (including Defendant Number) | Defendant Name | Joint and Several Amount |
|---|---|---|
| | | |

    [ ]   The defendant shall pay the cost of prosecution.

    [ ]   The defendant shall pay the following court cost(s):

    [ ]   The defendant shall forfeit the defendant's interest in the following property to the United States:


    Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, (8) costs, including cost of prosecution and court costs.

AO 245B (Rev. 06/05) Judgment in a Criminal Case---Denial of Federal Benefits

| | | |
|---|---|---|
| DEFENDANT: | ANTHONY R. ROMERO | |
| | AKA VICTOR HUGO GONZALES | Judgment - Page 7 of 7 |
| CASE NUMBER: | 6:05CR10080-001 | |

# DENIAL OF FEDERAL BENEFITS
## (For Offenses Committed on or After November 18, 1988)

## FOR DRUG TRAFFICKERS PURSUANT TO 21 U.S.C. § 862

IT IS ORDERED that the defendant shall be:

[x]  ineligible for all federal benefits for a period of 5 years .

[ ]  ineligible for the following federal benefits for a period of _.

(specify benefit(s))

## OR

[ ]  Having determined that this is the defendant's third or subsequent conviction for distribution of controlled substances, IT IS ORDERED that the defendant shall be permanently ineligible for all federal benefits.

## FOR DRUG POSSESSORS PURSUANT TO 21 U.S.C. § 862(b)

IT IS ORDERED that the defendant shall:

[ ]  be ineligible for all federal benefits for a period of _.

[ ]  be ineligible for the following federal benefits for a period of _.
(specify benefit(s))

[ ]  successfully complete a drug testing and treatment program.

[ ]  perform community service, as specified in the probation and supervised release portion of this judgment.

[ ]  Having determined that this is the defendant's second or subsequent conviction for possession of a controlled substance, IT IS FURTHER ORDERED that the defendant shall complete any drug treatment program and community service specified in this judgment as a requirement for the reinstatement of eligibility for federal benefits.

Pursuant to 21 U.S.C.§ 862(d), this denial of federal benefits does not include any retirement, welfare, Social Security, health, disability, veterans benefit, public housing, or other similar benefit, or any other benefit for which payments or services are required for eligibility.  The clerk is responsible for sending a copy of this page and the first page of this judgment to:

U.S. Department of Justice, Office of Justice Programs, Washington, DC 20531

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, (8) costs, including cost of prosecution and court costs.

ATTACHMENT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-10080-01-WEB |
| | ) | |
| ANTHONY R. ROMERO, | ) | |
| a/k/a Victor Hugo Gonzales, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### Memorandum and Order

This matter came before the court on September 22, 2005, for an evidentiary hearing on the defendant's motion to suppress evidence. The court took the motion under advisement at the conclusion of the hearing. For the reasons stated herein, the court finds that the motion to suppress should be denied.

I. *Facts.*

The court finds the following facts from the evidence presented at the hearing. In the early morning hours of April 10, 2005, Wichita Police dispatchers received an emergency call about a domestic disturbance in the 1800 block of S. Madison street in Wichita. Officers were dispatched to the scene. Wichita Police Department Sgt. James Espinoza was driving about two blocks away from scene when he saw an individual running south on the street. Espinoza followed the man and found him on the next street over hiding in some bushes. Espinoza drew his gun and ordered the man out of the bushes. He patted the man down and had him sit on the curb. Espinoza was able to converse with the man in English. He saw no indication that the man was intoxicated.

Appellate Case: 06-3092    Document: 010113900    Date Filed: 09/22/2006    Page: 40

The man said his name was Jose Gonzales, and that he had been running because he and his brother had been in an altercation at a bar and there were people chasing him. He said his brother had been hurt and was at a nearby residence, although he could not remember which house. By this time other officers had arrived at the scene, including Officer Dallas Boone. The man again told the officers his name was Jose Gonzales and gave his date of birth as April 27, 1978. Boone ran the name through the WPD's computerized "SPIDER" database but found nothing.

Meanwhile, Sgt. Espinoza joined other officers who were at the scene of the domestic disturbance on Madison street. After speaking with a neighbor who had phoned the police, WPD Officer Isis Izzard and several other officers knocked on the door of the house where the disturbance had occurred. They had to knock repeatedly before someone answered. Eventually, Ms. Michelle Montoya answered the door and let Izzard and the other officers enter. Several officers, including Sgt. Espinoza, fanned out through the residence to determine who was in the house and to ensure the officers' safety. They briefly went into each room and looked into areas, including closets, where a person might be hiding. The officers found Ms. Montoya's three young children in the house. Ms. Montoya reported that she and her boyfriend, Anthony Romero, had a fight and that Romero left the house shortly before the officers arrived. Sgt. Espinoza recognized the name Anthony Romero and suspected that he might be involved in drug trafficking. When Montoya described Romero, Espinoza concluded he was probably the man being detained by officers a couple of blocks away. At some point Espinoza radioed the officers and asked them to bring the man to Ms. Montoya's house.

Officers drove the man over to the residence on Madison. He was in the back of a patrol car but was not handcuffed. He was still insisting that his name was Jose Gonzales. When officers told him that

he could face charges if he was giving them a false name, he changed his story and told them that his name

was actually Victor Gonzales and that his date of birth was July 7, 1978.

At Sgt. Espinoza's request, Ms. Montoya agreed to come out of the house to see if she could

identify the man in the patrol car. She did so, and after seeing him told the officers that it was her boyfriend,

Anthony Romero. The man was in fact Anthony Romero, the defendant in this case. The defendant

claimed, however, that Ms. Montoya was lying, and that he was not Anthony Romero. When officers ran

Romero's name through the SPIDER database, they found there were two outstanding felony warrants for

his arrest. When the defendant still insisted he was not Romero, the officers asked him if he had any

identification, and he said he had some inside the residence that would prove he was Victor Gonzales.

After the officers learned of the outstanding arrest warrants, they handcuffed the defendant and placed him

in the back of the patrol car.

Back inside the residence, Sgt. Espinoza talked to Ms. Montoya. He told her he suspected the

defendant of having drugs in the house and asked for her permission to search the house. He said this

would be a great opportunity to make sure there were no drugs in the house around her young children.

Montoya said that would be okay with her, but that the defendant kept his belongings in a closet and in a

bedroom of the house and that the officers would have to get his permission to search those areas.

Espinoza went back outside and spoke to the defendant. He told the defendant they needed to establish

his identity and they wanted to look in the house for identification. The defendant said that was okay,

adding that he had some identification inside the door. Espinoza said Ms. Montoya had informed him that

the defendant kept some of his things in a closet, and Espinoza asked if it would be all right if they looked

through there to clear this thing up. The defendant said it would be okay. Espinoza in fact wanted to

3

Appellate Case: 06-3092    Document: 010113900    Date Filed: 09/22/2006    Page: 42

search for identification, but he also wanted to search for drugs.  He did not say anything to the defendant about drugs, however, because he did not want to alert the defendant to his suspicions about drug activity.

Espinoza went back in the house to the closet where the defendant kept his belongings.  It was a "linen type" closet, located in an open area between two bedrooms.  Espinoza opened the closet door and saw some clothes on hangers and some folded on the shelves.  He began on the top shelf, lifting up the folded shirts and looking underneath and feeling any pockets to see if they contained any type of identification.  Espinoza found a white "Walmart type" shopping bag under a piece of clothing on the shelf.  He could not see through the bag.  The bag was big enough that it could have contained a wallet, receipt, bill, or other item of identification.  Espinoza unfolded the bag and saw a clear plastic baggie containing what appeared to be rocks of crack cocaine.  Espinoza seized the item, which now forms the basis of the charge in Count 1 of the Superseding Indictment.

The defendant's girlfriend, Michelle Montoya, testified at the suppression hearing.  She said that prior to the incident at the house she and the defendant had been at a family gathering where the defendant had been drinking heavily.  She also said she did not understand that the officers wanted to look for identification, and that when they asked her about permission to search for drugs, she told them they would have to get the defendant's permission to go through his things.  Her testimony regarding consent was somewhat inconsistent, but she consistently testified that she told the officers they could search through the defendant's areas of the house, including the closet, if they got his permission.  The evidence shows that the officers did in fact obtain the defendant's permission to search that area.  She testified that Sgt. Espinoza was going in and out of the house at this time.  She said that the closet where the drugs were found was an area controlled by the defendant and that if the officers had permission from him to search that area it

4

was okay with her.  She testified that she knows the defendant by two names -- Anthony Romero and Victor Gonzales -- and that he goes by both names.

The defendant Anthony Romero also testified at the hearing.  He testified, through an interpreter, that he speaks very little English.  He said that when the officers asked for his permission to search the house, he did not understand why they wanted to search, and he denied giving them permission to search the closet.  He said he gave officers a false name because he knew he had warrants out for his arrest and he was scared.

II.  *Motion to Suppress*.

The defendant argues that the search of his closet was unreasonable under the Fourth Amendment. He contends that neither he nor Ms. Montoya consented to the search.  Moreover, he argues that he was drunk at the time and was incapable of giving voluntary consent.  Also, he contends the officers deceived him by stating that they were looking for his identification, and that such trickery would void any perceived consent.  *Citing United States v. Hernandez*, 93 F.3d 1493, 1500 (10th Cir. 1996).  Finally, he argues that the officers exceeded the scope of the purported consent by searching the closet shelf and opening what he refers to as a "wrapped package."

The government contends that the search was properly supported by voluntary consent.  It further contends that the officers' search was within the scope of the consent granted.

III.  *Discussion*.

The Fourth Amendment provides in part that "the right of the people to be secure in their ... houses, ... against unreasonable searches and seizures, shall not be violated...."  U.S. Const., Amend. IV.  The physical entry of the house is the chief evil against which the Fourth Amendment is directed.  *See Payton*

5

*v. New York*, 445 U.S. 573, 585 (1980). A warrantless entry or search of a house is per se unreasonable unless a specifically defined exception--such as valid consent--is present. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

To be valid, consent must be freely and voluntarily given. *United States v. Patten*, 183 F.3d 1190, 1194 (10th Cir.1999). Voluntariness is a question of fact to be determined from the totality of the circumstances. *Schneckloth*, 412 U.S. at 248-49. The government must prove by a preponderance of the evidence that consent was freely and voluntarily given. *United States v. Soto*, 988 F.2d 1548, 1557 (10th Cir.1993). To meet its burden, the government first must present clear and positive testimony that consent was unequivocal and freely and intelligently given. *United States v. Pena*, 143 F.3d 1363, 1367 (10th Cir.1998). The government also must prove that the officers used no implied or express duress or coercion in obtaining the consent. *Id*. The government does not discharge its burden "by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 549 (1968).

The court has no trouble finding from the evidence presented that Sgt. Espinoza asked the defendant for permission to search in the closet for identification. Nothwithstanding defendant's denial that the police ever asked him for permission to search, the weight of the evidence is clear that Espinoza asked him specifically about searching that area.[1] Moreover, the court finds credible Sgt. Espinoza's testimony that he specifically asked the defendant if he could look through his belongings in the closet for

---

[1] The court rejects defendant's claim that his interrogation of August 2, 2005, shows he did not consent to the search. During that interrogation, defendant claimed that he told the officers there was identification in the house but did not give them permission to look for it. When asked more particularly, however, defendant stated the he could not remember whether he gave them permission to look. Def. Exh. B at p. 7. At any rate, the court finds that Sgt. Espinoza's testimony on the issues of consent was more credible than the defendant's.

identification, and that the defendant responded unequivocally by saying he could.

The closer question is whether the consent given by the defendant was voluntary. The defendant was in custody at the time of the consent, a factor that tends to weigh against a finding of voluntariness due to the coercion inherent in a custodial setting. *See e.g., United States v. Shields*, 573 F.2d 18, (10th Cir. 1978) (this court has recognized that an alleged voluntary consent to search must be viewed with caution and misgivings if given after arrest). On the other hand, the defendant was on a public street in front of his home at the time of the consent, and the officers did not use any overt display of force or coercion to gain the consent. The interaction between the officer and the defendant was cordial and courteous at the time of the request. And although the officers did not inform the defendant that he had a right to refuse a search, the manner in which the officer sought consent conveyed that he was seeking the defendant's permission for a search and that the defendant was not obligated to give consent. Moreover, the evidence shows that the defendant is a competent adult who understood the circumstances and the nature of the officer's request. Although the defendant may not be completely fluent in English, the evidence persuades the court that the defendant understood the request, that he was able to communicate his thoughts to the officer, and that he made a decision of his own free will to grant permission to search the closet for his identification. The court notes that the evidence suggests the defendant himself suggested to the officers that they could find his identification in the house, a fact which tends to show that he was willing to let them look in the house for identification. Also, despite the testimony of the defendant and his girlfriend about how much alcohol the defendant drank prior to this incident, there is no credible evidence that defendant's ability to understand or to make a voluntary decision was impaired to any significant degree by alcohol.

Sgt. Espinoza candidly admitted that at the time he asked for consent to search he wanted to search

for drugs as well as for identification.  He said nothing to the defendant about drugs, however, instead

indicating that his interest was merely in finding identification.   In some circumstances, a misrepresentation

by an officer as to the purpose of a proposed search can contribute to a finding that a consent is

involuntary.  *See e.g., United States v. Carter*,  884 F.2d 368, 375 (8th Cir. 1989);  *United States v.*

*Alexander*, 390 F.2d 101 (5th Cir. 1968) ("[I]ntimidation and deceit are not the norms of voluntarism.  In

order for the response to be free, the stimulus must be devoid of mendacity.").  *See also* W.R. LaFave,

*Search and Seizure: A Treatise on the Fourth Amendment* § 8.2(n) (4th ed. 2004) and *United States*

*v. Glover*, 104 F.3d 1570, 1583-84 (10th Cir. 1987) ("In determining whether a consent to search is

voluntary, a court should consider the following: physical mistreatment, use of violence or threats of

violence, promises or inducements, deception or trickery, and the physical and mental condition and

capacity of the defendant.").  In this instance, the officer's request could possibly be characterized as a

"half-truth," because his representations were in fact truthful:  he wanted and intended to search for

identification, but he did not disclose that he also had suspicions and an interest in finding drugs.

Nevertheless, under the totality of the circumstances, the court concludes that the resulting consent was

voluntary.  As noted above, the defendant is a competent adult who understood the nature of the request

and even encouraged the police at one point to look for identification in the house.  Significantly, the

defendant was aware that by asking to search for identification, the officers were seeking evidence that

could be incriminating in nature, as they had previously warned him that misrepresenting his identity would

be a criminal offense.   The officer did not use any improper means of force or intimidation that would raise

a question about the voluntary nature of defendant's decision to permit a search.  And just as the courts

have rejected the view that police officers must always inform citizens of their right to refuse when seeking

permission to conduct a warrantless consent search, likewise there is no *per se* requirement that an officer must disclose all of his suspicions and/or explain all of the possible ramifications of allowing a particular search. *Cf. Moran v. Burbine*, 475 U.S. 412 (1986) (in determining whether waiver of *Miranda* rights is voluntary, the state of mind of the police is irrelevant to the question of the intelligence and voluntariness of respondent's election to abandon his rights; we have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights). The question here "is not whether the [defendant] acted in [his] ultimate self-interest, but whether [he] acted voluntarily." *United States v. Mendenhall*, 446 U.S. 544, 559 (1980). The defendant understood what the officer was asking and understood that by giving consent he was permitting the officer to look for evidence in a closet where drugs were located. Given the totality of the circumstances, including defendant's understanding of the request to search, his understanding of the consequences flowing from his consent, and the absence of any evidence that his consent was a product of improper coercion, the court concludes that his consent was voluntary. The fact that the officer did not inform the defendant about his suspicions of drugs did not render defendant's decision to permit the search involuntary. This was an essentially free and unconstrained choice, and the officer's additional suspicions or intent cannot be said to render the defendant's choice involuntary. *Cf. United States v. Andrews*, 746 F.2d 247, 250 (5th Cir. 1984) (although misrepresentation as to purpose of search was a factor to be considered, circumstances showed that consent was voluntary), *overruled in part on other grounds by United States v. Hurtado*, 905 F.2d 74 (5th Cir. 1990); *United States v. White*, 706 F.2d 806, 807-08 (7th Cir. 1983) (officer's subjective intent to search for money did not render involuntary a consent to search for drugs).

In addition to finding the consent was voluntary, the court also finds that the search was within the scope of the consent granted. The appropriate scope of a search is generally defined by its expressed object. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). It is limited by the breadth of any consent given. *United States v. Anderson*, 114 F.3d 1059, 1065 (10th Cir.1997). In determining the scope of consent, the courts apply an "objective reasonableness test" that asks: What would the typical reasonable person have understood by the exchange between the officer and the suspect? *See Jimeno*, 500 U.S. at 251. In this instance, the expressed object of the search was to look for the defendant's identification. A reasonable person would have understood the exchange between the officer and the defendant to mean that the officer was granted permission to look anywhere in the closet -- and within any item in the closet -- that might reasonably contain identification. *See Jimeno*, 500 U.S. at 251 (consent to search for specific items includes consent to search those areas or containers that might reasonably contain those items). That is precisely what the officer did. The white plastic "Walmart type" bag discovered by Sgt. Espinoza among the clothes in the closet was the type and size of a container that could reasonably have contained some form of identification, such as a wallet, a driver's license, mail, or a credit card receipt. The officer was thus entitled to open the sack, and when he did so he saw contraband in plain view and was entitled to seize it. *United States v. Kimoana*, 383 F.3d 1215, 1224 (10th Cir. 2004) (where consent was given to search a room for a motel key, it did not matter that officers looking under a mattress were actually searching for weapons rather than a key, because a key could fit under the mattress where the officers looked, and the officers' subjective intent was irrelevant).[2] *See also United States v. Thomas*, 372 F.3d 1173, 1178 (10th

---

[2] Just as in the *Kimoana* case, there is no evidence here that the officer "used an unreasonable amount of force or intensity in executing the search" for defendant's identification. *See Kimoana*, 383 F.3d

Cir. 2004) (discussing requirements of plain view doctrine). Accordingly, the court rejects the defendant's argument that Sgt. Espinoza exceeded the scope of consent by searching among the clothes in the closet or by opening the opaque plastic bag that held the cocaine.

IV. *Conclusion.*

The defendant's Motion to Suppress Evidence (Doc. 7) is DENIED. IT IS SO ORDERED this 19th Day of October, 2005, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge

at 1224, n.6.

ATTACHMENT C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,    )
                                 )
       Plaintiff,            )
                                 )
vs.                              )     Case No. 05-10080-01 WEB
                                 )
ANTHONY R. ROMERO,       )
                                 )
       Defendant.       )
_____)

## MOTION TO SUPPRESS

COMES now the Defendant, Anthony Romero, by and through his attorney, John K. Henderson, Jr., Assistant Federal Public Defender for the District of Kansas, and moves the Court pursuant to Rule 12 (b)(3)(c) and the Fourth Amendment to the United States Constitution to suppress evidence found in the search of Mr. Romero's residence.

The Defendant, through counsel, respectfully offers the following facts, authorities and argument in support of this motion.

## FACTS

On April 10, 2005, Mr. Romero drank about a case of beer and had an argument with his girlfriend at their home. His girlfriend, Michelle Montoya, was home with her 12 year old daughter and the daughter's best friend. When the argument began, her daughter called the police and Mr. Romero left the house.

The police responded and found Mr. Romero walking down a sidewalk near the house. They placed him under arrest in a squad car and took him home. Other officers went to the home and spoke with Ms. Montoya and her daughter. When Mr. Romero arrived, officers took Ms. Montoya to the squad car to identify Mr. Romero. She identified Mr. Romero and told the officers he went by two names - Anthony Romero and Victor Gonzalez. Ms. Montoya's daughter also identified Mr. Romero and told the officers his name. The officers asked Mr. Romero his name and he gave the officers both names.

As soon as the officers arrived at the home, they began searching the house for drugs.  They did not have a search warrant.  The search continued after interviewing Ms. Montoya and her daughter about the disturbance which prompted the call.

The officers did not ask Mr. Romero for permission to search the house.  He did not give them permission to search the house.  Indeed, he was so drunk he could not provide an informed and voluntary consent to search the house.

The officers told Ms. Montoya that they needed to search the house for Mr. Romero's ID.  The officers did ask Ms. Montoya for permission to search for the ID in the portion of the house where Mr. Romero allegedly kept his personal belongings and she stated the officers would have to obtain permission from Mr. Romero to search for his ID in that portion of the house.  Ms. Montoya was threatened that if she did not allow a search without a search warrant, and the officers found contraband, she would be charged.  She continued to maintain that the officers could not search the area where Mr. Romero kept his belongings without his permission.  The officers then said they had permission from Mr. Romero and proceeded to search a closet where Mr. Romero allegedly kept his belongings.  There they found a package larger than an ID.  The officers opened the package and it apparently contained cocaine.

The officers did not have permission to search the house, did not have permission to search the closet where Mr. Romero allegedly kept his belongings and to the extent their search was limited to an ID, had no reason to search for, seize and open a package larger than an ID.

## ARGUMENT

The Fourth Amendment prohibits "unreasonable searches".  U.S. Const. Amend. IV.  A search of a home without a warrant is per se unreasonable.  U.S. v. Butler, 966 F.2d 559 (10th Cir. 1992).  There are exceptions.

One exception is consent.  The Government has the burden of proving that the

2

consent by Mr. Romero or Ms. Montoya was voluntary - that is that there was no coercion, express or implied, and that the consent was unequivocal and specific as well as freely and intelligently given.  U.S. v. Price, 925 F.2d, 1268, 1270-1271 (10th Cir. 1991).

Ms. Montoya did not provide consent.  Even under threat that she would be charged with a crime, she continued to refer the officers to Mr. Romero.  Mr. Romero did not consent to the search.  Moreover,  Mr. Romero was drunk.  He was incapable of making an intelligent, knowing, free and unequivocal consent.  See, U.S. v. Luna-Santana ,128 Fed. Appx 42, 47-48, 2005 WL 806720 (C.A. 10 (Wyo.))

In addition, the officers deceived Mr. Romero and Ms. Montoya by stating they needed to look for Mr. Romero's ID.   This appears to be disingenuous given the repeated confirmations of Mr. Romero's identification by Ms. Montoya, Ms. Montoya's daughter and Mr. Romero himself.  Such "trickery" would void any perceived consent.  See, U.S. v. Hernandez, 93 F.3d 1493, 1500 (10th Cir. 1996).

In addition, the officers imposed a self-limiting restriction on their search by defining the object as an identification card with Mr. Romero's name.  The scope of the consent, even if it had been provided by Mr. Romero or Ms. Montoya was limited by the officer's own request - a search for Mr. Romero's ID.  The measure of the scope of any consent is objective reasonableness - what would the typical person understand by the conversation with the officer.  Florida v. Jimeno, 500 U.S. 248 (1991).   Here the officers said they were looking for Mr. Romero's ID.  Searching his closet shelf, seizing a wrapped package and opening the package are far beyond the scope of the search, even if consent was provided.

For these reasons, the package is subject to the exclusionary rule and any evidence of the package should be suppressed.  See,  Mapp v. Ohio, 367 U.S. 643, 654 (1961) and Wong Sun v. U.S. 371, U.S. 471, 487-88 (1963).

Appellate Case: 06-3092    Document: 010113900    Date Filed: 09/22/2006    Page: 54

WHEREFORE, the Defendant respectfully moves the Court to suppress evidence of the package of cocaine which is the subject of this prosecution.

Respectfully submitted,

s/John K. Henderson, Jr.
JOHN K. HENDERSON, JR.
Sup. Ct. No. 19022
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: John_Henderson@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2005, I electronically filed the foregoing Motion to Suppress with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

D. Blair Watson
Assistant U.S. Attorney
301 N. Main, Suite 1200
Wichita, KS  67202

s/John K. Henderson, Jr.
JOHN K. HENDERSON, JR.
Sup. Ct. No. 19022
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: John_Henderson@fd.org